IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PRIMITIVO CRUZ-VALENTIN,

      Plaintiff,

      v.

MICHAEL J. ASTRUE, Commissioner of
the Social Security Administration,

      Defendant.

Civil No. 11-2050 (BJM)

## OPINION AND ORDER

Plaintiff Primitivo Cruz-Valentin ("Cruz") seeks judicial review of the decision of the defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), finding that Cruz is not entitled to disability benefits under the Social Security Act, 42 U.S.C § 423, as amended. (Docket No. 1).  Cruz asks for judgment to be reversed and an order awarding disability benefits, or in the alternative to remand the case to the Commissioner for further proceedings.  Cruz filed a memorandum of law in support of his position.  (Docket No. 20).  The Commissioner answered the complaint (Docket No. 9) and filed a memorandum.  (Docket No. 23).  This case is before me on consent of the parties.  (Docket No. 4, 5).  After careful review, the Commissioner's decision is affirmed.

### LEGAL STANDARD

The court's review is limited to determining whether the Administrative Law Judge ("ALJ") employed the proper legal standards and focused facts upon the proper quantum of evidence.

Manso-Pizarro v. Secretary of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's

findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are

not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted

to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Ortiz v. Secretary of Health and

Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The court "must affirm the [Commissioner's]

resolution, even if the record arguably could justify a different conclusion, so long as it is supported

by substantial evidence." Rodriguez-Pagan v. Secretary of Health and Human Servs., 819 F.2d 1,

3 (1st Cir. 1987). Written reports submitted by non-examining physicians who merely reviewed the

written medical evidence are not substantial evidence, although these may serve as supplementary

evidence for the ALJ to consider in conjunction with the examining physician's reports. Irizarry -

Sanchez v. Comm'r of Soc. Sec., 253 F.Supp. 2d 216, 219 (D.P.R. 2003). The burden is on the

claimant to prove that he is disabled within the meaning of the Social Security Act. See Bowen v.

Yuckert, 482 U.S. 137, 146-147, n.5 (1987). A claimant is disabled under the Act if he is unable "to

engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is unable

to engage in any substantial gainful activity when he "is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy."[1] 42 U.S.C. § 423(d)(2)(A). In determining

whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. §

404.1520(a)(3).

---

[1]The phrase "work which exists in the national economy" means "work which exists in
significant numbers either in the region where such individual lives or in several regions of the country."
42 U.S.C. § 423 (d)(2)(A).

A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Bowen, 482 U.S. at 140-42; Goodermote v. Secretary of Health and Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). In step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. 20 C.F.R. § 404.1520(b). If he is not, the ALJ proceeds to step two, and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. However, if the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in which it is determined whether the claimant has an impairment equivalent to a specific list of impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, where the ALJ determines whether the impairment prevents the claimant from doing the work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform this work, then the fifth and final step of the process asks whether the claimant is able to perform other work in the national economy in view of his residual functional capacity ("RFC"), as well as age, education, and work experience.[2] If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

---

[2] An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1).

The claimant has the burden, under steps one through four, of proving that he cannot return to his former employment because of the alleged disability.  Santiago v. Sec'y of Health and Human Servs., 944 F.2d 1, 5 (1st Cir. 1991).  Once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Commissioner has the burden, under step five, to prove the existence of other jobs in the national economy that the claimant can perform.  Ortiz v. Sec'y of Health and Human Servs., 890 F.2d 520, 524 (1st Cir. 1989).

## FACTUAL AND PROCEDURAL BACKGROUND

Cruz was born on February 3, 1961.  (Transcript ["Tr."] 27, 248, 251).  He completed high school and obtained a counseling certification.   (Tr. 27, 278).   He worked in packing (manufacturing), maintenance, and as a prison counselor (Tr. 26, 39-40, 273) before allegedly becoming unable to work.  Cruz claims to have been disabled since January 8, 2004 due to a work injury which caused herniated nucleus pulposus, low back pain that radiated to his right leg, and depression.  (Tr. 23, 37, 256, 384).  He was 42 years-old on the alleged onset date of disability.  (Tr. 27).

Medical records from Centra Care Vineland - Florida Hospital (Tr. 380-393, Exhibit "Exh" 1F) show that Cruz received treatment under workers' compensation for low back pain and right leg pain resulting from a work injury.  (Tr. 381, 384).  Records for visits from January 9 to 30, 2004 show that Cruz was diagnosed with persisting cervical and lumbar strain, that he was prescribed medications, and that he could return to work on modified duty with no lifting, pushing, or pulling over ten pounds, and no climbing, bending, or stooping.  (Tr. 387-393).

Cruz underwent an orthopaedic evaluation at the Jewett Orthopaedic Clinic on February 13, 2004.  The results were reviewed by Dr. Gregory Munson.  (Tr. 386).  The report indicates that Cruz

was alert, oriented on all three axis, and showed no acute distress.  The diagnostic impression was

lumbalgia and right leg pain.  A lumbar spine MRI was ordered.  He was prescribed medications and

a RS4I Sequential Stimulator for the pain and to help retard disuse atrophy.  (Tr. 385).  The report

states that Cruz "may return to work as long as there is no lifting, carrying, pushing or pulling greater

than 5 pounds, no standing, walking, or sitting continuously for more than one hour until followup."

(Tr. 386).  A discharge report dated February 24, 2004 from the Florida Hospital - Rehabilitation and

Sports Medicine indicates that Cruz was not improving and stopped going to physical therapy.  (Tr.

382).  The lumbar spine MRI (Tr. 276), dated March 4, 2004, revealed that there was straightening

of the lumbar lordosis, facet arthropathy at the L4-5 level, and loss of disc hydration with left

paracentral herniated nucleous pulposus, and that the changes in curvature of the lumbar spine may

be associated with an underlying muscular spasm.  (Tr. 395-396, Exh 2F).

Cruz received treatment at Central Florida Physiatrists from May 25 to December 7, 2004.

(Tr. 397-407, Exh 3F).  On May 25 at the initial physical evaluation, Dr. Matthew Imfeld found Cruz

to be pleasant and in no acute distress.  (Tr. 404).  Electrodiagnostic studies dated June 1 were

normal with no evidence of a right lumbosacral radiculopathy, plexopathy, or peripheral neuropathy.

(Tr. 405).  Dr. Bassett saw Cruz on June 1 and 5, and prescribed Oxycodone and therapy.  On July

13,  Dr. Bassett found Cruz to be emotional with suicidal ideation.  Dr. Bassett prescribed anti-

depressants and thought it necessary that Cruz see a psychologist.  They also talked about an epidural

and surgery, but Cruz did not wish to have the latter.  (Tr. 402).  On July 20, Cruz informed that he

felt better with the medications and did not feel like he would hurt himself.  Three caudal epidural

blocks were performed, in August, September, and October.  (Tr. 399-401).  On November 9, Cruz

informed that he saw a psychologist.  (Tr. 398).  On December 7, Dr. Bassett noted that Cruz

continued to have pain, but that nothing except for medicines could be offered. Dr. Bassett assessed that Cruz "would have a 6% impairment rating based on the Florida Guidelines. His restrictions would be no repetitive bending or twisting and no lifting over 25 lbs." (Tr. 398).

Dr. Francisco Rivera-Rosado reported to the SSA on a RFC form that he treated Cruz on a monthly basis from October 13, 2006 to September 1, 2009 for chronic constant lower back pain, and that the prognosis was poor. Standing up and walking precipitated the pain. Cruz had reduced range of motion, sensory loss, muscle spasm, insomnia, severe depression, and anxiety. The symptoms and funcional limitations were reasonably consistent with Cruz's impairments. Cruz needed to walk around every fifteen minutes for about ten minutes each time during an eight-hour working day, and would need to take unscheduled breaks. Cruz needed a cane or an assistive device while engaging in occasional standing/walking. He had significant limitations with reaching or handling, could occasionally lift and carry ten pounds or less, rarely climb, and never stoop or crouch. Cruz would likely be absent more than four days per month as a result of his impairments. (Tr. 546-551, Exh 19F).

Cruz applied for a period of disability and disability insurance benefits and for supplemental security income on October 11, 2007. (Tr. 251-255 - Exh 3D and Tr. 248-250 - Exh 2D respectively). He acquired sufficient quarters of coverage to remain insured through December 31, 2012.[3] (Tr. 256 - Exh 4D).

A Work Activity Report dated November 9, 2007 states that Cruz continued working after his alleged disability started. Cruz worked as production supervisor in a recycling company from

---

[3]The ALJ's decision indicates that the date last insured ("DIB") is March 31, 2012. (Tr. 21, 23). The Field Office Disability Report states that the DIB is March 31, 2011. (Tr. 268)

June 2006 to May 15, 2007, and in maintenance at the Continental Plaza from 2003 to February 2005 and at Instair Services Group in March 2005.  Cruz informed that in the three jobs he stopped working within six months, or reduced his work hours, or changed the type of work due to his medical condition.  Since Cruz worked these jobs for less than six months, the SSA interviewer considered it an unsuccessful work attempt ("UWA") and the case was referred to the Disability Determination Services ("DDS") for a final determination, with a recommendation that the onset date be January 1, 2007.  (Tr. 258-266 - Exh 1E).  A Disability Report prepared by the Field Office indicates that although Cruz alleged a 2004 onset date, the correct potential onset date is May 15, 2007.  (Tr. 267 - Exh 2E).  Cruz also prepared a Disability Report, dated November 30, 2007, in which he indicates that he stopped working on June 1, 2007 (Tr. 271-279 - Exh 3E).

In an "Activities of Daily Living" report, dated December 26, 2007, Cruz described his lower back pain as constant, severe, and running to his hips and legs.  Physical activities exacerbated his pain, and the medications numbed the pain for a couple hours but did not take it away.  Side effects included nausea, dizziness, light headedness, and confusion.  Cruz informed that the pain affected his usual daily activities in that he could perform personal care with extreme difficulty and pain, that he had difficulty sleeping because the pain would wake him up, that he could no longer drive, and that he was unable to engage in home maintenance.  He also informed that he fell into a nervous crisis, and became extremely forgetful, lacked concentration, was confused, fearful, and lost all interest in work, sports and family relations.  (Tr. 53-57, 280-284; Exh 4E).  A Third Party Function Report prepared by his wife, Martha Elizabeth Cruz, revealed that he did not do any of the things that he used to do, such as work, sports, dancing, or help around the home; that he could not do any lifting because his back hurts when squatting, bending, or reaching, and that he could not stand or

sit in the same position for long.  He needed help bathing and getting dressed, and when depressed he had no motivation to take care of himself.  (Tr. 285-295, Exh 5E).

Dr. Jose A. Torres performed an initial evaluation on Cruz on February 19, 2008, due to low back pain, neck pain and thoracic back pain. (Tr. 419-422, Exh 6F).  During the physical exam, Cruz "appears pleasant, in no apparent distress, his given age, well developed, well nourished and with good attention to hygiene and body habitus.  Oriented to person, place and time.  Speech is appropriate with regular rate and rhythm.  Mood and affect normal and appropriate to situation." (Tr. 420).  The impression was of low back pain, lumbar inter-vertebral disc ("IVD") degeneration and radiculitis, and recommended a new lumbar MRI and maintaining treatment with Endocet. (Tr. 422).

Medical records from Lakeside Behavioral Healthcare dated October 8, 2007 to July 28, 2008 (Tr. 462-495, Exh 12F) show that throughout his treatment, Cruz, although depressed, had normal speech, good memory, fair concentration, insight, and judgment, congruent thought process, cooperative behavior, appropriate motor activity, was well groomed, and showed no signs of hallucinations or homicidal or suicidal ideation.  (Tr. 466-467, 470, 473, 481, 484).

In a Function Report dated January 14, 2008, Cruz reported that his conditions affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs.  Physical activities exacerbated his pain, and he could only walk for about ten to fifteen minutes before needing to stop and rest.  He could handle money, and had more passive hobbies such as reading, listening to music, and watching TV, but no longer engaged in social activities.  His depression affected his memory and concentration.  He could not handle stress and changes in routine, and feared heights, elevators, and being around groups of people.  (Tr. 309-320, Exh 7E).

Meanwhile, medical records from Centro Medico Las Americas, dated October 12 to December 17, 2007 (Tr. 413-418, Exh 5F) and February 15 to July 14, 2008 (Tr. 451-461, Exh 11F) show that Dr. Frank J. Yanez diagnosed lumbar disc degeneration with myelopathy, L4-L5 facet arthropathy, cervical degenerative disc disease, and major depression, and treated Cruz with pain medications such as Percocet for his severe low back pain.

Dr. Catharina Eeltink, DDS medical consultant[4], completed a psychiatric review technique form ("PRTF"), and reported on April 2, 2008 that Cruz had a depressive disorder but that the impairment was not severe.  (Tr. 424, 427, Exh 8F). The functional limitations included a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (Tr. 434).  "Claimant is able to care for his personal needs within his physical restrictions.  He is able to do light chores.  He is able to drive, shop, and handle money.  He relates adequately.  He has some reduced concentration."   The limitations were primarily physical, and those due to mental impairment were not severely limiting.  (Tr. 436).

A consultative physical examination was performed by Dr. Carol Grant, who reported on April 23, 2008 that Cruz had a fifteen pound lifting restriction, and that the outcome of the examination was in general normal, except that forward flexion of the thoracolumbar spine was forty degrees, and that supine and seated straight leg lifts were positive on the right at forty degrees.  Cruz was alert, oriented, with normal affect, mood tone, and intellectual functioning.  Gait was normal, and he could walk without assistance and squat.  The diagnostic impression was of low back herniated nucleus pulposus with right sided radiculopathy, and anxiety.  (Tr. 438-442, Exh 9F).

---

[4]It is unclear from the record whether Dr. Eeltink examined Cruz.

A physical RFC assessment dated April 29, 2008 was prepared by Dr. Robin Burgess.  As to exertional limitations, the RFC report states that Cruz could occasionally lift and /or carry twenty pounds, frequently lift and/or carry ten pounds, stand, walk and/or sit with normal breaks for a total of about six hours in an eight-hour workday, and push and/or pull unlimitedly.  With regards to postural limitations, he could climb and stoop frequently.  Cruz could balance, kneel, crouch, and crawl occasionally.  He had no established manipulative, visual, communicative, or environmental limitations.  Dr. Burgess noted that Cruz had a history of non-compliance and refusing treatment. (Tr. 443-450, Exh 10F).

The Regional Commissioner denied Cruz's application on April 29, 2008 (Tr. 21, 169 - Exh 3B), finding that although Cruz suffered from a herniated disc and nerve condition, he received treatment and that, considering Cruz's age, education, training, and work experience, his conditions were not severe enough to keep him from working.  Although Cruz could not do heavy work, he was able to act in his own interest and remember and follow instructions, and could perform past relevant work as a security guard.  (Tr. 172 - Exh 4B, 6B; Tr. 323-324, Exh 10E).  Supplemental Security Income ("SSI") payments were also denied.  (Tr. 173 - Exh 5B).

On reports filed on August 6, 2008, and on a Pain Questionnaire, dated August 27, 2008, Cruz declared that he was in constant and severe back pain and severely depressed, that he had become extremely forgetful, lacked concentration, and could not engage in any sort of physical or daily activity because it would exacerbate the pain, and cannot sleep because of the pain.  (Tr. 330-336, Exh 12E; Tr. 337-348, Exh 13E; Tr. 349-352, Exh 14E).

Another PRTF (Tr. 496-509, Exh 13F) and a mental RFC assessment (Tr. 510-513, Exh 14F), both dated September 12, 2008, were prepared by Dr. Maryann Wharry, medical consultant.[5] Upon review of the evidence in file, Dr. Wharry found that Cruz had medically determinable impairments (depressive DO  NOS and anxiety) (Tr. 499, 501), and  assessed that Cruz had the following functional limitations: a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation.  (Tr. 506).  The consultant noted from Cruz's medical record that Cruz still felt depressed and anxious even with the medications (Tr. 508). As to mental RFC assessment, Dr. Wharry concluded that Cruz should be capable of initiating and completing routine work tasks on an independent sustained basis. Periods of mild to moderate deficit of concentration, persistence, or pace were likely.  Social functioning did not reflect significant deficit, as Cruz was able to go out independently and  relate appropriately with others, although he did not like large crowds.  He could avoid hazards and adapt to routine changes.  (Tr. 512).

A second physical RFC assessment was prepared on September 17, 2008 by Dr. Sunita Patel, medical consultant.   (Tr. 514-521, Exh 15F).  As to exertional limitations, Cruz could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand, walk and/or sit with normal breaks for a total of about six hours in an eight-hour workday, and push and/or pull unlimitedly.  (Tr. 515).  With regards to postural limitations, he could climb, stoop, and crouch occasionally.   (Tr. 516).   He had no established manipulative, visual, communicative, or environmental limitations.  (Tr. 517-518).   The consultant noted that Cruz's symptoms were

---

[5]It is unclear from the record whether Dr. Wharry examined Cruz.

consistent with his medically determinable impairments and were partially credible and that, taking

into account his chronic neck and back pain with radiation to his right leg, the RFC was reduced

accordingly.  (Tr. 519).  The consultant also noted that the medical file did not contain a statement

by a treating or examining source regarding Cruz's physical capacities.  (Tr. 520).

Cruz's application was denied upon reconsideration on September 17, 2008 (Tr. 21, 181- Exh

9B, 366-368-Exh 16E), finding that Cruz received treatment for his conditions, that he was able to

communicate, act in his own interests, adjust to ordinary emotional stresses, get along with others,

do his usual daily activities without assistance, and that he was capable of performing other work

that did not require heavy lifting and that might only require a very short, on-the-job training.  (Tr.

180 - Exh 8B, 10B).  SSI payments were also denied on reconsideration.  (Tr. 178, Exh 7B).

On October 15, 2008, Cruz requested a hearing by an ALJ.  (Tr. 21, 184 - Exh 11B).  Cruz

declared on a disability report on appeal dated October 20, 2008 that his condition had not improved,

and his depression worsened, but was unable to recall approximate date of change.  (Tr. 372-378,

Exh 18E).

Cruz was treated at the Cabo Rojo Metropolitan Hospital (Psychiatric Hospital)  for major

depressive disorder, recurrent, severe with psychotic features from May 27 to June 5, 2009.   (Tr.

123-131; Tr. 532-539, Exh 17F).  According to the discharge summary, he was given psychological

and psychiatric treatment and medications.  (Tr. 134).

Dr. Ronald Malave-Ortiz, psychiatrist (ROVICO Healthcare Administrative & Consulting

Services, Inc.) reported on January 14, 2010 that he treated Cruz for major depression both

ambulatory and with partial hospitalization from May 8 to October 20, 2009.  (Tr. 132-139, 540-545,

552-564; Exhs 18F, 20F).  Dr. Malave-Ortiz found at the initial evaluation that Cruz had the

following limitations: poor insight, low self-esteem, poor control of impulses and emotions, and poor

problem-solving skills.     Cruz was depressed, anxious, irritable, distracted, had suicidal ideas,

chronic insomnia, and anhedonia, but had preserved memory, appropriate affect, was cooperative,

with a coherent and logical thought process, and oriented in person, place, and time.  (Tr. 139, 552).

Based on his examination, Dr. Malave's mental RFC assessment was that Cruz was seriously limited

but not precluded from carrying out very short and simple instructions, asking simple questions or

requesting assistance, being aware of normal hazards and taking appropriate precautions, maintaining

socially appropriate behavior, and adhering to basic standards of neatness and cleanliness.  He would

not meet competitive standards in team work, making simple work-related decisions, accepting

instructions and responding appropriately to criticism from supervisors, responding appropriately

to changes in a routine work setting, dealing with normal work stress, and interacting appropriately

with the general public. (Tr. 558, 560).  Cruz cannot perform semiskilled or skilled work.  (Tr. 558).

He has moderate restrictions of activities of daily living, extreme difficulties in maintaining social

functioning, extreme deficiencies of concentration, persistence, or pace, and would have one or two

episodes of decompensation withing a twelve month period.  (Tr. 560).  The symptoms and

functional limitations were reasonably consistent with Cruz's impairments, and he would likely be

absent more than four days per month as a result of his impairments.  (Tr. 562).

        The hearing was held on January 19, 2010.  (Tr. 21, 36).  A vocation expert ("VE") testified.

The ALJ considered the reported limitations and the physical and mental RFC assessments found

in exhibits 10F and 14F (lift twenty pounds occasionally, ten pounds frequently, remain sitting,

standing, or walking six hours in an eight hour work day, climb ladders and ramps frequently, climb

stairs occasionally, keep his balance, perform regular work tasks independently for a sustained period

of time, moderately limited in sustaining work pace for period of time, with no significant social

deficits, and the capacity to avoid risks and adapt to routine changes at work) and asked the VE if

such a person could return to Cruz's former jobs.  (Tr. 41-42).  The VE testified that such a person

would not be able to do the maintenance and packing jobs because they were medium exertional

level jobs, or the counseling job because it is a skilled job with complex instructions, and would not

be able to do routine work in a sustained way.  The VE also testified that there are jobs in Puerto

Rico that are routine, with simple instructions, that do not require frequent contact with the public,

such as labeler and shipping checker, both being unskilled, routine, with simple tasks and light

physical demand. (Tr. 43-44).  The ALJ then asked if other jobs existed for a person with all the

previously mentioned physical and mental limitations, that can lift ten pounds frequently but is

limited to lifting a maximum of 15 pounds.  The VE answered that there are sedentary[6] clerical jobs

that he could perform, such as telephone quotation clerk, and sedentary unskilled[7] jobs such as

document preparer.  (Tr. 45).  Counsel asked the VE if such a person, who is also limited to lifting

and carrying less than ten pounds occasionally due to his lower back condition, and who has some

limitations in fine manipulation for two hours in an eight hour work day, and who has to alternate

---

[6]SSR 96-9 provides: "[t]he ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday.  Sitting would generally total about 6 hours of an 8-hour workday.  Unskilled sedentary work involves other activities, classified as 'nonexertional,' such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions."

[7]SSR 85-15 states that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."

frequently between standing and sitting, would be able to do any existing job in the national economy. The VE answered that "[h]e would not be able to perform in a satisfactory way or in a sustained way within the eight daily work hours." (Tr. 46)

The ALJ issued a written decision on February 5, 2010 (Tr. 15-33) finding that Cruz was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act. (Tr. 21). The ALJ found that Cruz has the following severe impairments: herniated nucleus pulposus, low back pain, and depression. (Tr. 23). The ALJ determined that Cruz had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except crouching or balancing no more than occasionally. He retained the ability to interact with others, but must work away from large groups of people and had occasional difficulties with concentration and pace of work. He was able to assess danger, handle funds, make adjustment to changes, and function at light levels of exertion. (Tr. 25). The ALJ found that Cruz was unable to perform past relevant work, but that considering his age, education, work experience, and RFC, there were a significant number of jobs in the national economy that he could performed. (Tr. 26-27).

On February 24, 2010, Cruz requested review of the ALJ's decision. (Tr. 13). On August 24, 2011, the Appeals Council denied the request. (Tr. 1-5). Cruz appealed the ALJ's decision as the Commissioner's final decision.

## DISCUSSION

This court must determine whether there is substantial evidence to support the ALJ's determination at step five in the sequential evaluation process contained in 20 C.F.R. § 404.1520 that based on Cruz's age, education, work experience, and RFC, there was work in the national economy that he could perform, thus rendering him not disabled within the meaning of the Act.

Cruz argues that the ALJ did not deploy the correct legal standards because the ALJ (1) posed a hypothetical question to the VE that did not include all of his limitations as reported in the medical records, (2) did not ask the VE a question that addressed the erosion of the occupational base by Cruz's exertional and non-exertional limitations, as per SSR 85-15 and SSR 96-9p, and (3) did not explain the weight given to treating and non-examining physicians as required by 20 C.F.R. § 404.1527(e)(2)(ii)[8] or offer "good reasons" for not relying on the treating physicians' reports as required by SSR 96-2p.  (Docket No. 20).  The Commissioner argues that there is substantial evidence in the record to support his decision that Cruz is not entitled to disability benefits for that time period and requests that his decision be affirmed.  (Docket No. 23).

### *Hypothetical Question*

In this case, the ALJ used a VE to determine whether substantial gainful activity existed in the national economy that Cruz could have performed.  The VE's testimony is relevant to the inquiry insofar as the hypothetical questions posed by the ALJ to the VE accurately reflect the claimant's functional work capacity.  See Arocho v. Sec'y of Health and Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).  A proper hypothetical question is one that "incorporates reasonably all disabilities of the claimant recognized by the ALJ, which "accurately reflects all of [the claimant's] impairments and the degree of their severity." Bowling v. Shalala, 36 F.3d 431 (5th Cir.1994).  In other words, a VE's testimony must be predicated on a supportable RFC assessment.  See 20 C.F.R. § 404.1520(g)(1).  An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1).  The initial

---

[8] Plaintiff cited a nonexisting subsection (f) of 20 C.F.R. § 404.1527.  The applicable subsection is 20 C.F.R. § 404.1527(e)(2)(ii).

question, then, is whether the record contains substantial evidence to support the ALJ's RFC

determination.

### *Physical RFC Assessment*

The ALJ found that Cruz has the physical RFC to perform light work except for crouching

or balancing no more than occasionally.  (Tr. 25).  "Light work involves lifting no more than 20

pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though

the weight lifted may be very little, a job is in this category when it requires a good deal of walking

or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg

controls.  To be considered capable of performing a full or wide range of light work, you must have

the ability to do substantially all of these activities.  If someone can do light work, we determine that

he or she can also do sedentary work, unless there are additional limiting factors such a loss of fine

dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

Evidence found in the medical records of the treating physicians supports this physical RFC

finding.  The medical record from Centra Care Vineland - Florida Hospital dated January 2004,

where Cruz received treatment the month of his work accident, states that he could return to work

on modified duty with no lifting, pushing or pulling over ten pounds.  These restrictions do not

preclude him from performing sedentary work, which "involves lifting no more than 10 pounds at

a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20

C.F.R. § 404.1567(a).  The record also states that he could not climb, bend, or stoop while on

modified duty, but does not rule out walking or standing.  (Tr. 387-393).  The evaluation performed

at the Jewett Orthopaedic Clinic, dated February 2004, also indicates that Cruz could return to work,

with the following restrictions: no lifting, carrying, pushing or pulling greater than five pounds, no

standing, walking, or sitting continuously for more than one hour until follow-up. (Tr. 386). Again,

Cruz was not precluded from lifting, walking, sitting, pushing or pulling.  The record for Central

Florida Physiatrists, where he received follow-up treatment from May to December 2004, includes

a December 2004 assessment that his restrictions would be no repetitive bending or twisting and no

lifting over twenty-five pounds.  (Tr. 398).  This record reveals that he was not precluded from

performing light work.  Dr. Rivera-Rosado, who treated Cruz from 2006 to 2009, assessed that Cruz

could occasionally lift ten pounds, and would need a cane or other assistive device while engaging

in occasional standing or walking. Dr. Rivera-Rosado did not assess restrictions on sitting. (Tr. 549-

550).  This assessment does not preclude him either of performing sedentary work, in which walking

and standing are also required occasionally.  20 C.F.R. § 404.1567(a).

Evidence found in the records of the non-treating physicians also supports this physical RFC

assessment.  Dr. Grant, who performed a consultative physical examination, reported that Cruz had

a fifteen pound lifting restriction.  Gait was normal and he could walk without assistance.  (Tr. 439,

441).  Dr. Burgess, a non-examining physician who prepared a physical RFC assessment, concluded

that Cruz could occasionally lift and /or carry twenty pounds, frequently lift and/or carry ten pounds,

stand, walk and/or sit with normal breaks for a total of about six hours in an eight-hour workday, and

push and/or pull unlimitedly.  (Tr. 443-450).  A second RFC medical consultant, Dr. Patel, assessed

that Cruz could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds,

stand, walk and/or sit with normal breaks for a total of about six hours in an eight-hour workday, and

push and/or pull unlimitedly.  (Tr. 515).

In addition, although Cruz reported to the SSA in 2008 that his conditions affected his ability

to lift, stand, walk, sit, and reach, he does not allege that he is unable to perform these physical

activities.  He also reported that he can walk for ten to fifteen minutes before needing to stop and rest

for five minutes, and he does not use devices to assist in walking.  (Tr. 318-319).

### *Mental RFC Assessment*

The ALJ found that Cruz has the mental RFC to retain the ability to interact with others but

must work away from large groups of people and has occasional difficulties with concentration and

pace of work.  He is able to assess danger, handle funds, make adjustment to changes, and function

at light levels of exertion.  (Tr. 25).  Although Cruz alleged in a Function Report that he could not

interact socially or be around groups of people, that he could not handle well stress or changes in

routine, and that his memory and concentration were affected (Tr. 317-319, 331), the medical records

contradict his self-reported limitations.  It is well within an ALJ's authority to weigh the evidence,

to determine the credibility of the plaintiff's subjective complaints, and to use only credible evidence

in posing a hypothetical question to a vocational expert. 20 C.F.R. § 404.1527(c)(2); <u>Arocho</u>, 670

F.2d at 375 (1st Cir. 1982) (ALJ must decide what testimony will be credited when forming the

hypothetical questions).

Medical records from Lakeside Behavioral Healthcare dated October 8, 2007 to July 28, 2008

show that  Cruz himself reported in 2007 to treatment staff that he is social.  (Tr. 489).  Throughout

his outpatient treatment, Cruz, although depressed, had good memory, fair concentration, insight,

and judgment, congruent thought process, cooperative behavior, and appropriate motor activity.  (Tr.

466-467, 470, 473, 481, 484).  Dr. Malave-Ortiz, treating psychiatrist in 2009, reported that Cruz

was seriously limited but not precluded from carrying out very short and simple instructions, being

aware of normal hazards and taking appropriate precautions, maintaining socially appropriate

behavior, and adhering to basic standards of neatness and cleanliness.  (Tr. 558-560).  Cruz reported

being able to handle funds.  (Tr. 316).

Dr. Eeltink, a DDS consultant, reported in 2008 that Cruz's impairment was not severe, with mild difficulties in social functioning, maintaining concentration, persistence, or pace, and no episodes of decompensation. (Tr. 434). He could handle funds and relates adequately. (Tr. 436). Dr. Wharry, a RFC medical consultant, assessed that Cruz should be capable of initiating and completing routine work tasks on an independent sustained basis. Periods of mild to moderate deficit of concentration, persistence, or pace were likely. Social functioning did not reflect significant deficit, as Cruz was able to go out independently and relate appropriately with others, although he did not like large crowds. He could avoid hazards and adapt to routine changes. (Tr. 506, 512).

Dr. Malave-Ortiz's assessment of Cruz's limitations conflicts with those of one treating facility and the non-treating physicians. It is the Commissioner's responsibility to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts in the evidence. Ortiz, 955 F.2d at 769, citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987). Generally, more weight is given to the opinion of a treating source if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). The ALJ may reject the conclusions of a treating physician regarding disability where contradictory medical evidence appears in the record. Arias v. Comm'r of Social Security, 70 Fed. Appx. 595, 598 (1st Cir. 2003), citing Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988). It is within the ALJ's discretion to credit the more positive reports of claimant's mental condition. See 20 C.F.R. § 404.1527(d)(2)-(5); Román-Román v. Comm'r of Soc. Sec., 114 F. App'x 410, 411-12 (1st Cir. 2004), citing Rodríguez-Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 2-3 (1st Cir.

1987).  In this case, the ALJ afforded little weight to Dr. Malave-Ortiz's assessment as other

evidence in the record did not support extreme limitations (Tr. 26), and the resolution of conflicts

in the medical evidence is reserved for the Secretary to determine.  See Lizotte v. Sec'y of Health

and Human Servs. 654 F.2d 127, 130 (1st Cir. 1981).

In sum, the functional work capacity reported by the treating physicians and consultative

physicians are substantially compatible and contained within the hypothetical questions posed to the

VE.  I therefore find that the hypothetical questions relied on by the ALJ were properly predicated

on an RFC that was substantially supported in the record.

### *Erosion of the Occupational Base*

Cruz alleges that the ALJ disregarded nonexertional limitations that sedentary work require

the person to do at least occasionally, specifically stooping, and did not ask the VE to address erosion

of Cruz's occupational base by such a limitation.  (Docket No. 20, p. 14-15, 18).  Where a claimant

has one or more non-strength limitations that significantly affect his ability to perform the full range

of jobs he is otherwise exertionally capable of doing, exclusive reliance on the Grid is inappropriate

and the Commissioner must carry his burden by other means, typically through the use of a

vocational expert.  Ortiz, 890 F.2d at 524 (citations omitted).  "If a non-strength impairment, even

though considered significant, has the effect only of reducing that occupational base marginally, the

Grid . . . can be relied on exclusively," but the need for vocational evidence increases with the degree

of erosion of the occupational base.  Id. at 524-25 (citations omitted).

In this case, the ALJ recognized that, although the Grid directed a finding of not disabled,

Cruz had additional non-exertional limitations that impeded his ability to perform a full range of

light work, and sought a VE's opinion.  (Tr. 27).  SSR 85-15 states that "[i]f a person can stoop

occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and

light occupational base is virtually intact." 1985 SSR LEXIS 20. SSR 96-9p explains the SSA's

policies regarding the implications of an RFC for less than a full range of sedentary work. 1996 SSR

LEXIS 6. It states that "[a]n ability to stoop occasionally; i.e., from very little up to one-third of the

time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would

significantly erode the unskilled sedentary occupational base and a finding that the individual is

disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally

erode the unskilled occupational base of sedentary work. Consultation with a vocational resource

may be particularly useful for cases where the individual is limited to less than occasional stooping."

(emphasis in original).

      Although the ALJ did not specifically address stooping in the hypothetical questions, the

matter was addressed by the treating and consultative physicians. Medical records for the month of

treatment immediately after the work injury occurred in 2004, and Dr. Rivera-Rosado who treated

Cruz until 2009 state that Cruz could not stoop. However, the medical consultants, Dr. Burgess and

Dr. Patel, reviewed the evidence in file and assessed that Cruz could stoop frequently and

occasionally, respectively. Furthermore, Dr. Grant, the medical consultant that examined Cruz,

assessed that the outcome of his examination was in general normal. His gait was normal, and he

could walk without assistance and squat. I find that the matter of erosion of the occupational base

by physical limitations was addressed by the ALJ.

### SSR 96-8p and the "Good Reasons" Requirement

      Cruz also argues (1) that the non-examining RFC consultant (without specifying which one)

did not include a discussion linking the medical evidence with their RFC assessments as required

by SSR 96-8p and SSA-4734-F4 (mental RFC assessment form)[9], and consequently the ALJ erred

---

[9]Cruz does not make reference to the physical RFC assessment form, SSA-4734-BK.

in relying on these assessments, and (2) that the ALJ did not offer "good reason" for disregarding treating physicians' opinions, particularly Dr. Malavé-Ortiz's opinion, as per 20 C.F.R. § 404.1527(d)(2).

SSR 96-8p requires that the "RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." 1996 SSR LEXIS 5. The only clue I have as to which consultant he is referring to is the RFC assessment form he cited. Form SSA-4734-F4 is a mental RFC assessment form, and it is used for function-by-function review. "In the SSA-4734-F4 RFC assessment, the medical consultant is to describe the relationship between the medically determinable impairment and his/her conclusions of RFC which have been derived from the evidence, including a discussion of why reported daily activity restrictions are or are not reasonably consistent with the medical evidence." Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986). The only mental RFC assessment available in this case was prepared by Dr. Wharry.

Section III of the mental RFC assessment dated April 29, 2008 that Dr. Wharry prepared on Form SSA-4734-F4 contains her summary conclusions in narrative form, as required by that section and SSR 96-8p, but does not clarify limitation or function, or mention any medical evidence on record. There is no discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence. I also reviewed the two physical RFC assessment forms in this case, and they do discuss function in relation to claimant's statements and the medical evidence.

Under the "good reasons" requirement of 20 C.F.R. § 404.1527(d)(2), "the notice of determination must contain specific reasons for the weight given to the treating source's medical

opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 SSR LEXIS 9 at 11-12. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). An absence of clinical notes supporting a treating source's opinion does not justify an ALJ's rejection of that opinion. Soto-Cedeno v. Astrue, 380 Fed. Appx. 1, 2-3 (1st Cir. 2010). However, the portions of an RFC assessment by a treating physician that meet the definition of medical opinion are subject to the "good reasons" requirement, whereas those parts that address capability to perform work are not entitled to significant weight because that issue is reserved to the Commissioner. See Collins v. Astrue, 324 Fed. Appx. 516, 520 (7th Cir. 2009).

As to physical limitations, page 6 of the ALJ's decision contains a summary of the findings by the treating physical medical sources, with specific mention of the physical consultative exam performed by Dr. Grant. The decision states that Cruz exhibited a decrease in range of motion at the lumbar segment, positive straight leg raising test at forty degrees, and some disc herniation. However, there was no evidence of weakness, atrophy fasciculation, or neural damage, no surgery was performed, Cruz had refused treatment on several occasions, and is on medications for his conditions. One treating physician had assessed that he would only have a 6% impairment rating with a lifting restriction of maximum twenty five pounds. Dr. Grant reported a fifteen pound lifting restriction. The ALJ found that his physical limitations would not preclude him from performing work within the sedentary range of exertion. (Tr. 26).

As to mental limitations, the ALJ specifically mentions that little weight was given to Dr.

Malave's assessment that Cruz was extremely impaired in areas of social functioning and

concentration, persistence, and pace.  Although Cruz was hospitalized in 2009 due to depression, the

ALJ noted that there was no evidence in the record regarding total inability to function.  Cruz

retained the ability to interact with others, assess danger, handle funds, make adjustment to changes

and function at light levels of exertion.

In view of the above, I find that although the mental RFC consultant, Dr. Wharry, did not

include a discussion linking the medical evidence with the mental RFC assessment as required by

SSR 96-8p and SSA-4734-F4 (mental RFC assessment form), I find that no prejudice was caused

to the claimant, and remanding the case for further elaboration of  why reported symptom-related

functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

medical and other evidence would serve no additional purpose.  I also find that the ALJ's discussion

at page 6 constitutes "good reasons" because it was sufficiently specific to make clear the weight the

ALJ gave to the treating physicians' medical opinions and there is substantial evidence on record to

support the ALJ's findings.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed. Judgment shall be

entered accordingly.

**IT IS SO ORDERED.**

At San Juan, Puerto Rico, on this 13th day of March, 2013.

*s/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge